CHARLES M. HARKER v. PHILANDER C. BRINK AND OTHERS.

1. Duplicity in pleading consists in setting up two or more distinct grounds, either of which would constitute a good defence: no matters, however multifarious, will make a plea double when they, together, constitute one entire proposition or defence.

2. If one of three joint defendants be summoned, and the others returned not found, in a summons on a joint contract, the defendant who is summoned cannot set up in his defence that the others have no notice: a defendant cannot plead a matter which in no wise prejudices his rights, but is personal and peculiar to his codefendants.

3. The remedy upon a contract, both in substance and form, must be regulated by the *lex fori*, and not by the *lex loci contractus*, even where the contract was to be performed in the place of making it.

4. The statute of New Jersey directing how to proceed in a suit against joint contractors, when only one is brought into court, applies as well to persons residing out of the state as to its citizens.

5. The act authorizing a judgment against several joint debtors, upon service of process upon one only, is not void, nor is a judgment entered against such debtor not summoned invalid. It might be a question, whether it would be enforced in another state if the defendant was not within the jurisdiction of this state, and such debtor would be allowed, even in the courts of this state, to show, in avoidance of the judgment, that he was not a joint contractor, as it is this fact, alone, that makes such judgment binding upon him.

This was an action on a promissory note, given by the defendants, Brink, Durbin, & Tyson, by their partnership name, Brink & Durbin. The declaration was in the usual form. Brink, alone, was summoned, the other defendants were not found. He pleaded as follows:

And the said Philander C. Brink, by R. W. H., his attorney, comes and defends the wrong and injury, when, &c., and prays judgment of the said writ and declaration, because, he says, that the said several supposed promises and undertakings in the said declaration mentioned, if any such were made, were, and each of them was, made and to be performed without the state of New Jersey, to wit, at Philadelphia, in the state of Pennsylvania, and that at the time of the making of the said several supposed promises and undertakings, and each of them, if any such were made, and ever since, the said Alexander C. Durbin and Charles M. Tyson resided, and still reside, out of the state of New Jersey, to wit, at Philadelphia, in the state of Pennsylvania; and that neither the said writ nor any other process hath been served upon the said Alexander C. Durbin and Charles M. Tyson, or either of them, to appear in court, nor have they, the said Alexander C. Durbin and Charles M. Tyson, or either of them, appeared in court to answer the said writ or declaration, and this he, the said Philander C. Brink, is ready to verify: wherefore, because the said writ or any other process hath not been served upon the said Alexander C. Durbin and Charles M. Tyson, or either of them, and because they, or either of them, have or have not appeared in

court to answer said writ or declaration in this behalf, the said Philander C. Brink prays judgment of the said writ and declaration, and that the same may be quashed, &c.

To this plea the following demurrer was filed:

And the said plaintiff saith, that the said plea of the said defendants, Philander C. Brink (who is impleaded with Alexander C. Durbin and Charles M. Tyson, trading, &c.,) and the matters therein contained, in manner and form as the same are above pleaded and set forth, are not sufficient in law to quash the said writ, and that he, the said plaintiff, is not bound by the law of the land to answer the same, and this he is ready to verify: wherefore, for want of a sufficient plea in this behalf, the said plaintiff prays judgment, and that the said defendant may answer further to the said declaration, &c. And the said plaintiff, according to the form of the statute in such case made and provided, states and shows to the court here the following causes of demurrer to the said plea, that is to say, that the said plea is double and argumentative; and for that the said plea alleges that the said contract was made and was to be performed in Philadelphia, and out of the state of New Jersey, and that Tyson and Durbin reside in Philadelphia, and in the same plea sets up that the defendants, Charles M. Tyson and Alexander C. Durbin, have not had process served upon them or appeared to said action, thereby setting up two distinct and separate matters in abatement in same plea; and that the said plea is in all other respects uncertain, informal, and insufficient.

The argument on this demurrer was by Mr. *Dudley*, for plaintiff, and Mr. *Browning*, for defendants, upon written briefs.

*Dudley*, for plaintiff

The defendant, Brink, pleads in abatement in the same plea—

1. That the promises were made and to be performed out of the state, to wit, in Philadelphia.

2. That at the time, &c., Durbin and Tyson, two of the de-

fendants, resided, and still reside, out·of this state, to wit, in Philadelphia.

3. That process has not been served upon Durbin and Tyson.

To this plea in abatement the plaintiff demurs specially.

1. The plea is double. There are three independent separate and distinct matters of defence pleaded and set up in this plea. They require three answers in the replication.

Pleas must be single. 1 *Chitty's Pl.* 532, (*9th Am. ed.*)

Duplicity in abatement is as objectionable as in bar. 1 *Chitty's Pl.* 458.

This plea is frivolous; none of the matters set up in the plea constitute a valid defence to the action. The contract made out of the state. This is no defence, the action is transitory. The defendants, Durbin & Tyson, residing out of the state is no defence. The plea then sets out that Durbin & Tyson were not served with process, &c. This is bad in substance.

It is admitted that, at common law, a plaintiff has to bring all the defendants into court before he could declare against them and obtain his judgment; if they could not all be served, the mode was to proceed to outlawry against those not in court.

But if the action was joint against two defendants, and only one was found and in court, you could outlaw the one not in court, and then proceed against the other. 1 *Tidd's Pr.* 130, (*3d Am. ed.*); *Edwards* v. *Carter*, 1 *Strange* 473.

There is no outlawry in New Jersey. Our statute against joint debtors seems to have been passed to provide a remedy to supply the place of outlawry. *Rev. Laws* 802, § 3.

The first act upon this subject seems to have been passed in 1771. See *Allison's Laws* 353.

This act (*Rev. Laws* 802, § 3,) has been in force for more than half a century; has been practised under by every lawyer in our state; and so far as is known, has never been before directly questioned in our court. But the practice under this act has been recognised and sanctioned by the court. See *Ford* v. *Munson*, 1 *South.* 93; *Bank of New Brunswick* v.

*Arrowsmith,* 4 *Halst.* 284 ; *Reid et al.* v. *Crawford's administrators, Penn. R.* 622.

In New York, the practice under their act (previous to the code) was similar. See 1 *Burrill's Pr.* 118 and 126.

If this court hold that the plaintiff cannot proceed to judgment under this third section in *Rev. Laws* 802, the party is without a remedy. It will be impossible for him to obtain a judgment in this case, the defendants being joint debtors, and not all within the reach of the process of this court.

In this case, the defendant pleaded the plea in question with the general issue. At last term, a motion was made to strike out the plea in abatement, on the ground that a plea in bar and abatement could not be pleaded together to the same matter. The defendant elected to have the plea in bar (general issue) struck out, and plea in abatement to stand. It is therefore submitted, that if judgment should be rendered in favor of plaintiff, that it should be final.

Mr. *Browning,* for defendants.

This case comes up on plea and demurrer. It may be premised that Charles M. Tyson was a special partner in the firm of Brink & Durbin under the special partnership law of Pennsylvania, which, like ours, exempts him from suits or liability, except for fraud and other conduct specified in act, and that, therefore, Mr. Tyson has a substantial defence to the action, whenever he shall be brought into court, independently of any other defence by the other partners.

I. It is objected that the plea is bad for duplicity. This objection does not apply. Duplicity in pleading is where the plea contains two distinct matters, " either of which would bar the action, and each of which requires a separate answer." This does not prevent the stating of any number of separate or independent facts, all of which are necessary to constitute a valid defence, or else no one could ever make defence, unless a single fact would serve him.

The duplicity complained of is, that the plea avers that the contract was made and to be performed in Philadelphia, and

that Tyson and Durbin resided there, and also avers that they had not been served with process or appeared.

If process had been served upon them, or they had voluntarily appeared, it would be of no importance (so far as the defence now set up is concerned) where the contract was made and to be performed, or where they resided; hence that they had not been served with process or appeared, is a necessary fact in the defence, and the plea would clearly be bad without it. An example of setting up several distinct facts in the same replication and rejoinder will be found in the case of *Beardsley* v. *Southmayd*, 3 *Green* 171.

II. The substantial matter raised by the plea, and which I suppose is designed to be reached by the demurrer, is, that the court has no jurisdiction over two of the defendants, and, consequently, can render no valid judgment against them.

The contract declared on is joint, so that the judgment must be against all or none. Our act (unlike the act of several of the states which authorize a judgment against those, only, of several joint debtors who were served with process) requires the judgment to be against all, "such of them so brought into court and against the other joint debtor or debtors." *Rev. Stat.* 802, § 3.

The plea relies on the following facts:

1. The contract was made and to be performed out of New Jersey.

2. That at the time of the making of the contract, and ever since, Durbin and Tyson resided out of New Jersey.

3. That the process was never served on either, and—

4. That neither has ever appeared in court.

I. It is not the case of a contract made in this state, which is neither the place of the making nor performance; and the contract cannot, therefore, be presumed to have been made in reference to our laws. Durbin and Tyson, too, were and are nonresidents. The cannot be presumed to be acquainted with our laws. The contract and contractors are strangers.

No presumptive notice can or ought to be made against them. All contracts may be presumed to be made in reference to the laws of the country where made and to be performed,

Harker v. Brink et al.

especially when made by residents of such country: those laws, then, make a part of the contract. Upon this ground, our statute may be held to be valid as to contracts made or to be performed here or by our own citizens, because then the makers may be presumed to know that, by our laws, whenever process should be served upon any one of the joint debtors, judgment could be rendered against all.

But where the contract is made, and to be performed elsewhere by aliens, our laws do not enter into the contract, and no such presumption of knowledge can arise. If, then, our statute is to be held valid, it should, upon principle, be confined to cases of contract made or to be performed here or by our citizens, as to which, when process shall be served on one, the other joint debtors may be deemed constructively in court. To extend it beyond these would be a violation of the first principles of natural justice, which allows no person to be condemned in person or property without a hearing or an opportunity of being heard. All process and all pleadings are based on this principle: the one presupposes the necessity of notice, the other the presence of the parties, actual or constructive.

The general phraseology of our act ought to be so restrained. Its application to our own citizens or to domestic contracts is going quite far enough. No legislature ought to be presumed, by any general phraseology, to have intended to go further. Beyond this it has not been sanctioned by any decisions of our courts. The question now raised could only arise in a plea of abatement. We have no case where such plea has been interposed. Upon a general demurrer or writ of error, it would only appear that all the joint debtors were not served with process; but where the contract was made or to be performed, or whether those not served with a process were residents or nonresidents, would not appear.

The court is not, therefore, bound by any previous decision.

The case of *Beardsley* v. *Southmayd*, already referred to, (3 *Green's Rep.* 171) is a striking instance of this court restraining the general phraseology of an act to proper principles; and on the ground now contended for, that the legisla-

ture could not be presumed to have intended to go further, although the general language of the exception in our statute of limitations exempted from its operations all persons and contracts when the defendant had not resided in the state six years after the cause of action accrued, yet the court held that it applied only to cases when the contract was made or the plaintiff resided here, and not to alien parties and contracts. This case was confirmed by *Taberer* v. *Brentnall* (3 *Harr.* 362), and by *Howe* v. *Lawrence* (1 *Zab.* 750).

II. But if our statute is to be construed as extending to foreign persons and contracts, then I contend that it is not a valid law, on the ground, that it is opposed not only to natural justice, but to the fundamental principles of the social compact, which are paramount to all enactments. Jurisdiction, to be rightly exercised, must be founded either upon the person or upon the thing being within the territory. No sovereignty can extend its process beyond its own territorial limits to subject either persons or property to its judicial decisions. Every exertion of this sort is a mere nullity, and incapable of binding such persons or property in any other tribunal. *Story's Confl. of Laws*, § 539; *Vattel, B.* 2, *chap.* 8, § 4; *Piquet* v. *Swan*, 5 *Mason* 35–42.

The present is not a proceeding *in rem*, and there is, therefore, no property to give jurisdiction. Nor is this the place of the making and the performing of the contract, if a contract, under any circumstances, can be considered a thing to give jurisdiction. The persons of Durbin and Tyson are not here, either constructively, by residence, nor actually, by notice. Any judgment against them would therefore be *coram non judice* and void; and, surely, no court ought to proceed when its judgment would be a nullity. Such proceeding would be a solemn mockery—the form of a controversy without parties, a judgment without a person or thing to be affected by it.

It is no answer to say, that one of the several defendants has been served with process, and that he is therefore in court, unless he is the only one to be affected by the judgment. This is not so. Our act requires the judgment to be against all; all

must be bound by it or none. It is absurd to have a judgment against several, which is void as to part.

The service of process upon one of several defendants charged as joint contractors can in no sense be considered a constructive notice to the others on the ground of a joint contract, because such a presumption would assume the very thing necessary to be proved, a joint contract. Upon such an assumption, you would only have to bring one of any number of defendants into court, and charge him with being a joint debtor with the others, and the very charge would make it so, for the purpose of jurisdiction; and unless he disproves it, judgment must go against all. He might be utterly unable or unwilling to make defence. He would be under no obligation to do so, except as to himself; indeed, his interest might be to have the contract adjudged joint, when it was, in truth, several, and thereby oblige others to help pay the debt. Nor would he be obliged to give notice to the others, even if he could. Or they might be wholly unknown to him or absent, so that no notice could be given. Such a proceeding, as to the absent defendants, is as objectionable as if they were the only defendants. A law authorizing judgment to be entered against a single defendant without notice, actual or constructive, would be just as valid as a law authorizing a judgment against several absent defendants as joint debtors, simply because notice has been given to one. It may be urged, and some of the authorities seem to take that ground, that such a judgment would not be conclusive, except against the defendant served with notice; that, as to the others, it would be, at most, only *prima facie* evidence of debt. But why *prima facie?* This would be to give the judgment some effect against persons not within the jurisdiction of the court, and therefore just as objectionable in principle as if conclusive, and might be just as ruinous. It would change the *onus probandi*, oblige the defendant to disprove what the plaintiffs were bound to prove.

How can you issue execution on a judgment absolute as to one, and *prima facie* as to other defendants? The issuing of executions implies a conviction by a judgment, which is a verity.

Not to give the judgment a *prima facie* effect would be to give it no effect, that is, it would be a nullity or no judgment at all, except in form.

Again, it may be said that such a judgment, as to the defendants not notified, would be binding only in the sovereignty where rendered. It is as erroneous to make it binding there as any where else. The objection is, in condemning a man unheard, and without opportunity of being heard, in assuming jurisdiction where none exists. Why give effect here? Why should such absent defendants' property or person be liable to seizure here, if they or it should subsequently be found in this state? Suppose, in this case, a judgment should be rendered against Durbin and Tyson upon the ground now taken, it would be a nullity in any other state or sovereignty. No action could be elsewhere maintained upon it, nor could it be used as evidence. But Durbin and Tyson may, at some subsequent day, be found here, and have process served on them. The judgment would be either conclusive or *prima facie* evidence of the debt. It would be used against them, and a second judgment rendered upon notice. This, then, becomes a verity, and conclusive evidence in any other state where they may have property. Thus the judgment would be made effectual, not only here but elsewhere. The error of such a proceeding is incurable; it is opposed to first principles, based upon an usurpation of jurisdiction where none exists.

Where an order of filiation had been made against a putative father, without it appearing on the face of the order that the father had been summoned, Justice Fortescue said, "It is certain that natural justice requires that no man shall be condemned without notice." *Rex* v. *Cleg*, 1 *Str.* 475.

In the case of *McKelway and Gray* ads. *Jones*, where a verdict had been rendered against Gray without process having been served on him, C. J. Hornblower said, "To suffer a verdict to stand against a man in his absence, in a suit he never heard of until after he had been tried and condemned, would be a reproach to any civilized community." 2 *Har. Rep.* 347.

A judgment by default against a nonresident without personal notice is a nullity. *Rider* v. *Alexander*, 1 *chap.* 275.

Notice to a defendant is indispensably necessary in order to give jurisdiction. *Com's of Pilotage* v. *Law, R. M. Charlton's Rep. (Ga.)* 208.

A law of the territory of Iowa directed that suits might be instituted against "the owners of the half-breed lands lying in Lee county" by notice given through newspapers. The Supreme Court of the United States held the law, and the judgment under it, to be void. 11 *Howard's Rep.* 437.

This is a very extraordinary case in many respects, and as it contains a reference to many cases upon the subject, I refer particularly to it. Justice McLean, delivering the opinion of the court, said, "These suits were not a proceeding *in rem* against the land, but were *in personam* against the owners of it. Whether they did all reside within the territory or not does not appear, nor is it a matter of importance. No person is required to answer in a suit on whom process has not been served or whose property has not been attached. In this case there was no personal notice, nor an attachment or other proceeding against the land, until after the judgments. The judgments are therefore nullities, and did not authorize the execution on which the land was sold. *Ib.* 460.

Without commenting further on the numerous authorities, I take leave to refer the court to the following: *Hodges* v. *Eastman*, 12 *Verm.* 358; *Hill* v. *Law*, 2 *Watts & Serg.* 121; *Davis* v. *Tiernan*, 2 *How's Miss. Rep.* 786; *Dennison* v. *Lewis*, 6 *Ib.* 517; *Hughes* v. *Evans*, 4 *S. & M.* 737; *Bell* v. *State*, 7 *Blackford* 33; *Heaston* v. *Fulgham*, *Ib.* 101; *Wood* v. *Watkinson*, 17 *Conn.* 500; *Davis* v. *Sharp*, 6 *Iredell* 14; *Douglass* v. *Massie*, 16 *Ohio* 271; *Gleason* v. *Dodd, Adm.*, 4 *Metc.* 333; *Ewer* v. *Coffin*, 1 *Cush.* 23.

These cases will be found to bear more or less directly upon, and many of them to sustain the views I have taken.

In conclusion, I submit that the plea is good, and that the demurrer should be overruled; that if the act is to be construed to extend beyond persons or contracts over which the

state has actual or constructive jurisdiction, it is opposed to sound principle and void.

CHIEF JUSTICE. The first ground of demurrer assigned is, that the plea is bad for duplicity. The vice of duplicity in pleading, consists in relying upon two or more distinct grounds, either of which, independent of the others, would constitute a good defence to the action. No matters, however multifarious, will operate to make a plea double that together constitute but one connected proposition or entire point. 1 *Chit. Pl.* (*7th ed.*) 259, 261; *Stephens' Pl.* 265, 274.

The rule of good pleading requires that the plea be confined to a single *point,* not to a single *fact.* *Gould's Pl.* 420, 424, § 3, 9.

All the facts stated in the defendant's plea, tend to establish but one ground of defence. It is not, therefore, obnoxious to the charge of duplicity.

The principal question raised by the demurrer touches the construction and the validity of the third section of the act concerning obligations and to enable mutual dealers to discount. *Rev. Stat.* 802. By that section it is declared, that if upon process issued against joint debtors, any of them be brought into court, judgment and execution shall pass against them all, in like manner as if all had been brought into court by virtue of such process.

The action was commenced against three defendants, Brink, Durbin, and Tyson, as partners. The summons was served upon Brink alone, the other defendants being returned "not found." Brink alone appears, and pleads in abatement. The material facts stated in the plea are—(1.) That the contract upon which the action is founded was made and to be performed out of this state. (2.) That at the time of making the contract, and ever since, two of the defendants, Durbin and Tyson, have resided out of this state. (3.) That the process was not served upon either of them, and that neither has appeared to the action.

The first consideration that presents itself in reference to the plea is, that the matter pleaded in defence in no wise

affects the rights of the party pleading it. Brink has been duly summoned; he appears to the action; he has as full an opportunity of defence as if his codefendants were in court. However the statute may infringe the rights of his codefendants, it in no wise trenches upon his. It has made no change in his legal rights or liabilities. He was liable for the debt at common law precisely to the same extent that he now is. However available the defence might be to the other defendants, in an attempt to enforce the judgment against them, it does not lie in the mouth of this defendant. There is no reason why he should be permited to evade his just responsibility upon the ground that the form of proceeding is prejudicial to the rights of his codefendants. The plea is personal to them. A defendant cannot plead a matter which in no wise prejudices his rights, but is personal and peculiar to his codefendants. *Van Bramer* v. *Cooper*, 2 *Johns. R.* 279.

The only ground upon which the plea can avail the defendant is, either that the case is not within the provisions of the statute, or that the statute is a nullity, and can confer no authority to render a judgment contrary to the course of the common law upon a joint contract before all the defendants are brought into court. The points relied upon in the elaborate and very able brief of the defendants' counsel are—

1. That the statute authorizing judgment to be entered against parties not served with process must be construed to extend only to citizens of this state, or to parties to contracts made and to be executed within the state.

2. That if the statute be not thus limited it is void, as opposed to natural justice and the fundamental principles of the social compact.

1. The place where the contract was made or to be performed cannot be in any wise material to the inquiry. It is true that all contracts are presumed to be made in reference to the laws of the country where they are entered into or to be performed; but this applies to the contract itself, not to the mode of enforcing it. The law of the place where the contract is made will decide the *validity* of the contract, and will govern its nature, obligation, and construction. But it is uni-

versally established that the forms of remedies, the modes of proceeding, and the execution of judgments are to be regulated solely and exclusively by the laws of the place where the action is instituted. *Story on Confl. of Laws*, § 242, 263, 556.

The doctrine of the common law, to use the language of Justice Story, is so fully established on this point, that it would be useless to do more than state the universal principle which it has promulgated, that, in regard to the merits and rights involved in actions, the law of the place where they originated is to govern; but that all forms of remedies and judicial proceedings are to be according to the law of the place where the action is instituted, without any reference to the domicil of the parties, the origin of the right, or the country of the act. *Story on Confl. of Laws*, § 558.

Laws, especially those regulating the rights and the duties of the citizen, are held to apply primarily to the citizens of the state by which the law is enacted. *The State* v. *Ross*, 3 *Zab.* 522.

But a statute regulating the forms of remedies and judicial proceedings must apply to all persons parties to the proceedings, whether citizens or aliens. The statute in question was obviously designed to apply to nonresidents. It was intended as a substitute for the common law method of proceeding by outlawry, which applied as well to nonresident foreigners as denizens. Its object being to provide a method of proceeding wherever either of several joint debtors cannot be found to be served with process, its design will be frustrated unless it extend as well to nonresident debtors as to citizens of the state. The necessity of the provision is in fact much stronger in regard to nonresident than to resident debtors. In respect to the latter, when the process cannot be served by reason of their residence in different counties, means of bringing them into court might readily be devised, but no such relief is attainable in regard to nonresidents. The language of the statute, in terms, includes all joint debtors, and there is no reason why it should be restricted in its application.

The second point presents for consideration the *validity* of

the statute under which the proceedings in this cause have been conducted. It is insisted that the enactment is void, inasmuch as it authorizes judgment to be entered against a defendant who has neither been served with process, nor attached by his property, nor actually appeared to the suit.

This provision was originally introduced into our law by an act of the colonial legislature, in 1771, (*Allinson* 353). The reason of the enactment is stated in the preamble to be, that "creditors are often put to great trouble and difficulty in recovering debts due from joint partners, the proceedings to outlawry against persons who cannot be taken by process not being in use in this colony, and doubts have arisen whether any one joint partner is now compellable to answer the partnership debts, unless all are brought into court, which many times cannot be done."

This act, having expired by its own limitation, was revived and continued in force by the act of 1782. *Wilson* 311.

The provision was incorporated, by Governor Paterson, into the act concerning obligations, and to enable mutual dealers to discount. *Paterson* 259. That act, substantially as it now stands upon the statute book, was drafted by him. It was reported to the legislature after he was authorized to *alter and modify*, as well as to revise the statutes. The section now under consideration manifestly underwent his careful revision. The phraseology of the original statute is altered in several particulars. The substance of the enactment is unchanged, except by the substitution of the word *process* for *proofs*, near the close of the section. This was not a mistake, either in the printing or in the engrossing of the act, as was intimated by the chief justice in *Ford* v. *Munson*, 1 *South.* 94. The manuscript draft of the act shows that the alteration was intended. The phraseology of the act, as well as the reason of the provision, renders it, indeed, not improbable that the use of the word proofs, in the original act of 1771, was an error, and that the revisor did but restore the true reading.

From a period prior to the organization of the state government, this provision has remained upon the statute book. It has furnished the only mode of proceeding by which judg-

ments could be recovered against joint debtors, where either of them could not be served with process. It has been constantly resorted to in practice. Questions arising upon it have been frequently before this court. Some of its provisions have been the topic of unfavorable comment from the bench; but its validity never appears to have been drawn in question. *Ford* v. *Munson*, 1 *South.* 93.; *Gulick* ads. *Thomson*, 1 *South.* 292; *Bank* v. *Arrowsmith*, 4 *Halst.* 284.

A provision of similar import, and almost identical in phraseology, was enacted in New York as early as 1789. 2 *Laws of New York* 102, § 23; 1 *Rev. Laws* 521. That act contained a provision that no execution should issue against the individual property of the debtor who did not appear. The same law, with some modification, has remained in force in that state until the present time. As the act now stands, it contains a provision that the judgment shall not be conclusive as to the liability of the party not served with process, but only as to the extent of the demand. 2 *Rev. Stat.* 377. The courts had adopted substantially the same construction of the original act. The provision has been very frequently before the courts of that state in various aspects, but it does not appear that its validity has ever been impugned. *Dando* v. *Doll*, 2 *Johns. Rep.* 87; *Bank of Columbia* v. *Newcome*, 6 *Johns. Rep.* 98; *Hutchins* v. *Fitch*, 4 *Johns. Rep.* 222; *Taylor* v. *Pettibone*, 16 *Ib.* 66; *Carman* v. *Townsend*, 6 *Wend.* 206; *Mason* v. *Denison*, 15 *Wend.* 84.

It must be a clear case, not admitting the possibility of a doubt, which under such circumstances will justify a court in pronouncing any act of the legislature inoperative and void.

How far the judgment will be regarded as conclusive by the courts of this state against the party who has not appeared, and whether the judgment will be enforced by the tribunals of other states, are totally different questions.

As a general principle, a judgment against a party over whom the court had no jurisdiction will not be enforced by the tribunals of other states, especially against its own citizens. 3 *Story's Com.* 183, § 1307; 2 *Amer. Leading Cases* 538; *Hall* v. *Williams*, 6 *Pick.* 232; *Ewer* v. *Coffin*, 1 *Cush.* 23.

And the principle has been applied to the case of a judgment rendered against joint debtors under the statute of New York. *Darcy* v. *Ketchum*, 11 *Howard* 165; *Wood* v. *Watkinson*, 17 *Conn.* 500.

But the very authorities relied upon to show that the judgment will not be enforced by the tribunals of other states, recognise its validity in the state by whose laws it is authorized. *Story on Conflict of Laws*, § 539; *Piquet* v. *Swan*, 5 *Mason's Rep.* 35.

There is no direct authority upon the point under consideration. As has already been suggested, the validity of the act appears never to have been called in question; but that very fact, under the circumstances, affords, indirectly, the strongest authority in support of the law.

But aside from the authority afforded by the fact, that the law has been in practical operation for the greater part of a century, and its validity unquestioned by the bar or bench, upon principle the objection cannot prevail.

There is an undoubted necessity in every community for the existence of some law by which the obligations of joint debtors may be enforced, where all cannot be served with process. Every commercial community has, and of necessity must have, some provision upon the subject. What that shall be, must rest in the wisdom of the legislature. They have an undoubted right to prescribe the mode of conducting suits and the forms of judicial proceedings. They have done so, in the present instance, in terms that cannot be mistaken. Whether the provisions of the statute are the most wise or equitable that could be adopted, is not for this court to determine. If the operation of the law be harsh or unjust, it is for the legislature to apply the remedy.

In *Webster* v. *Reid*, 11 *Howard* 459, Justice Maclean, in delivering the opinion of the court, said, "No person is required to answer in a suit upon whom process has not been served, or whose property has not been attached. In this case there was no personal notice nor an attachment or other proceeding against the land until after the judgment. The judgments are therefore nullities, and did not authorize the execu-

tions on which the land was sold. As applied to the facts of the case, there can be no question upon the propriety of the decision. The plaintiffs in error on the trial below offered to prove that the judgments, executions, and sheriff's sales were all obtained by fraud; that no process had been served upon either of the defendants in the suits in which the judgments were rendered; and that no notice was given by publication of the institution of the suits, as prescribed by the statute. The validity of the statute prescribing the form of proceeding, or the effect of the judgment in case the statute had been complied with in good faith, were not the points before the court.

But the statute of this state does not dispense with the service of process, it simply provides that notice to one of several joint debtors shall be deemed notice to all who are beyond the reach of process. It is assuredly within the province of the legislature to declare what shall be competent notice of the commencement of a suit or legal service of judicial process within the jurisdiction of the state. If, in point of fact, the parties defendants are joint debtors, the justice of the provision cannot be impeached. The whole objection rests in the allegation, that the law assumes, without proof of the fact, that the defendants are in reality joint debtors. But does the law so assume? Does not the entire objection rest upon an erroneous interpretation of the statute? The statute merely declares, that in case the defendants are joint debtors, the service upon one is valid. The whole objection is avoided by holding, as has been done in New York, that the judgment is not conclusive upon the party not served with process as to the fact of the partnership; and it seems consistent, alike with reason and sound principle, to permit the party who has not been served with process, and has had no opportunity of defence, to show that in point of fact he was not a joint debtor, and that, consequently, the judgment, as to him, was not authorized by the statute. If in fact he was jointly indebted with the defendant upon whom process was served, there is no foundation in law or justice for the objection, that judgment was served without notice.

It may be confidently affirmed, moreover, that our statute is less obnoxious to the objection urged against it than was the common law method of proceeding to outlawry, for which the statutory proceeding is a substitute. The proceeding to outlawry was not only dilatory and expensive to plaintiffs, but harsh and oppressive to nonresident defendants. Proceeding for the recovery of the debt ceased, and no judgment could be recovered in that action until the absent defendant was pronounced beyond the protection of the law. But by that process the defendant himself was not only put out of the protection of the law, and subject to imprisonment, but his goods and the profits of his land were forfeited to the crown, and were appropriated to the payment of the debt for which the original suit was instituted. The plaintiff, therefore, recovered his debt, not by way of judgment and execution it is true, but out of the proceeds of the defendant's property forfeited to the crown as a punishment for his contumacy in not appearing to the plaintiff's suit, a punishment, it will be observed, in case of nonresident alien defendants, for disobedience to process of which he had never heard, and for an assumed contempt of the authority of a government to which he owed no allegiance. *Matthews* v. *Abo,* 2 *Ld. Ray.* 349 ; 2 *Arch. Pr.* 164 ; 2 *Sellon's Pr.* 279, 297 ; *Barnes* 324, 325.

The fact, that the defendant was put to his election between abiding by his plea in abatement or in bar, and his electing the former, does not deprive him of the right, which he would otherwise have had, of pleading over.

There must be judgment for the demurrant

Let the defendant answer over.